**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

|  |  |
|---|---|
| FUYAN WANG,<br><br>    Petitioner,<br><br>v.<br><br>CONGHUA YAN,<br><br>    Defendants/Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. [          ]<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S FIRST AMENDED ANSWER AND DEFENSES
TO PETITION FOR ENFORCEMENT OF PROPERTY DIVISION BY CONTEMPT**

Defendant Conghua Yan ("Defendant"), pro se, answers Petitioner's "Petition for Enforcement of Property Division by Contempt" (the "Petition") and asserts defenses under Fed. R. Civ. P. 81(c), and states:

## I.  INTRODUCTORY STATEMENT

1. Petitioner seeks (a) "immediate" disbursement / turnover of Defendant's ERISA-governed retirement funds, (b) contempt findings, fines, and **incarceration of Defendant** for up to **six months** and then continued coercive incarceration "**until** Respondent **complies**" for **up to eighteen more months,** (c) **forced "clarification" of the divorce decree to make it jail-enforceable**, and (d) attorney's fees in favor of Petitioner's counsel.

2. Defendant denies that Petitioner is entitled to any of that relief.

3. Defendant denies state court's subject jurisdiction and personal jurisdiction. Federal Court is granted exclusive jurisdiction over the subject matter of ERISA plan under the ERISA act. This Court had acquired subject matter jurisdiction over Defendant's ERISA fund plan and acquired personal jurisdiction over the Defendant and plan's administrator since 2023, before the state court acquired any jurisdiction over the same subject matter and same parties. The federal jurisdiction continues before the final judgment.

4. ERISA's anti-alienation clause, 29 U.S.C. § 1056(d)(1), bars assignment, garnishment, turnover, or forced distribution of pension/401(k) plan assets except through a Qualified Domestic Relations Order ("QDRO") that meets 29 U.S.C. § 1056(d)(3).

5. Petitioner has not filed any final, qualified, plan-approved QDRO. Instead, Petitioner demands **contempt and incarceration now** and "**QDRO** paperwork" **later**.

6. On information and belief, between April and July 2022, and during the divorce proceedings, several judges and counsel caused two prejudgment writs of garnishment to issue without the mandatory state-law application and bond. Those writs purported, under color of Texas law, to abstract two amounts of $25,000 each from Defendant's ERISA-governed retirement funds. The second writ was kept in the state court's possession, was not disclosed to Defendant, and was not disclosed on the face of the Final Decree. The Final Decree does not state that those ERISA

funds were already taken, restrained, or segregated under that writ; instead, the Final Decree states that the prior unlawful abstraction was Petitioner's separate property. The Final Decree itself served as a vehicle to conceal that damage in furtherance of the prior ERISA embezzlement scheme. Additionally, the existence and concealment of the second writ are material because Petitioner is now asking the Court to act as if that undisclosed possession does not exist and is seeking "immediate" turnover, contempt, incarceration leverage, and fee extraction, despite ERISA's anti-alienation rule.

7.    On information and belief, this Petition is not a neutral enforcement filing. It is a damage-control maneuver in furtherance of an ongoing ERISA/RICO scheme Defendant has already pleaded in a related federal RICO case, *Yan v. State Bar of Texas, et al.*, No. 4:23-cv-00758-P-BJ (N.D. Tex. Fort Worth Div.). Defendant has alleged a long-running pattern of actors using prejudgment and post-judgment devices (concealed prejudgment writs, turnover / receivership orders, "emergency QDRO" language, threats of contempt and incarceration, and attorney-fee extraction) to unlawfully abstract, divert, and launder ERISA plan assets, and then attempting to sanitize that taking afterward as "clarification" or "enforcement."

8.    Defendant does not ask this Court to re-divide the marital estate or change the percentage split in the divorce decree. Defendant accepts that whatever percentage split the decree awarded remains whatever the decree says. Defendant challenges the method: Petitioner's attempt to use contempt and incarceration to coerce alienation of ERISA-protected retirement assets without a qualified QDRO and to retroactively legitimize earlier unlawful abstraction efforts (including the concealed writs).

## II.  ANSWERS TO PETITIONER'S ALLEGATIONS

For clarity, Defendant tracks the Petition's sections. Except where expressly admitted, all allegations are denied.

### A.  "Discovery Level"

8.    Petitioner alleges that discovery is intended "under level 2 of rule 190 of the Texas Rules of Civil Procedure." Defendant lacks knowledge or information sufficient to admit or deny that statement and therefore denies it. After removal, discovery is governed by the Federal Rules of Civil Procedure (Fed. R. Civ. P. 26 et seq.), not Texas Rule 190.

B. "Parties"

9. Defendant admits only that Petitioner identifies herself as Fuyan Wang and has named Defendant as "CONGHUA YAN."

10. Defendant denies all remaining allegations in this section, including any allegation that service, personal jurisdiction, or venue in the state enforcement / contempt suit was proper. Defendant reserves all objections to service and process.

C. "Order to Be Enforced"

11. Petitioner alleges that a Final Decree of Divorce (the "Decree") signed on or about September 30, 2024 awarded Petitioner "50% of the total vested account balance" of a retirement/401(k)-type account, and that Petitioner is entitled to enforce that award by contempt, immediate disbursement, and incarceration of Defendant.

12. Defendant admits only that a document titled "Final Decree of Divorce" exists and contains language purporting to award Petitioner a percentage share of certain retirement benefits and referencing entry of a QDRO.

13. Defendant denies Petitioner's characterization that she is automatically entitled to immediate turnover of ERISA plan assets, or to jail Defendant to coerce alienation of ERISA-governed assets, without a valid, finalized, plan-approved QDRO that satisfies 29 U.S.C. § 1056(d)(3).

14. Defendant further alleges, on information and belief, that before the Decree was signed the state court had already caused two prejudgment writs of garnishment to issue and to be executed, purporting under Texas law to abstract $25,000 amounts from Defendant's ERISA-governed retirement funds. The second prejudgment writ and the amount it purported to hold were concealed from Defendant and never disclosed in the Decree's text. The Decree nowhere alerts that ERISA assets were already restrained under such a writ. The Petition now proceeds as if that writ possession does not exist, when in fact funds were secretly restrained in violation of ERISA's anti-alienation clause.

15. Defendant denies that Petitioner (or anyone acting with her) may rely on that concealed prejudgment writ to bypass ERISA's anti-alienation clause, 29 U.S.C. § 1056(d)(1).

D. "Alleged Violation"

16. Petitioner alleges Defendant "failed to transfer" 50% of a US Bank / 401(k)-type retirement account and "failed to provide" Petitioner her 50%, and alleges Defendant failed to pay plan-administrator fees so a QDRO could be processed.

17. Defendant denies these allegations.

18. Defendant states:

a)      ERISA prohibits assignment, garnishment, turnover, or forced payout of Defendant's retirement plan assets except through a valid QDRO under 29 U.S.C. § 1056(d)(3).

b)      Petitioner has not alleged a final, qualified, administrator-approved QDRO. Instead, she demands contempt and incarceration now and demands "required information to complete the QDRO" afterward.

c)      Defendant cannot be jailed for refusing to perform an act that is not required by a valid QDRO and that federal law forbids — i.e., forced alienation of ERISA plan assets without a valid QDRO.

d)      The "violation" Petitioner asserts ignores that, on information and belief, the state court and aligned counsel already attempted prejudgment garnishment against those same ERISA funds, kept that writ internally, and concealed it from both the Decree and Defendant. The Petition attempts to act as if nothing irregular happened and to force Defendant to "polish" or complete that prior unlawful act.

19. On information and belief, the sequence of Petitioner's conduct — concealing the writ and then seeking contempt leverage — matches the same racketeering pattern already pled in Defendant's related federal case: actors use state court instruments to further a continuing scheme, including attempting to incarcerate Defendant to prevent exposure of the federal RICO suit, in furtherance of a decade-long, statewide racketeering enterprise.

E. "Relief Requested / Contempt and Jail"

20. Petitioner asks the Court to (i) order "immediate" disbursement/turnover of Defendant's retirement funds, (ii) compel Defendant to provide plan/account information, (iii) hold Defendant "in contempt, jailed, and fined … for a period of six months," and (iv) jail Defendant

coercively "for a period not to exceed eighteen months … or until Respondent complies." Petitioner also demands attorney's fees in favor of counsel.

21. Defendant denies Petitioner is entitled to any of this relief.

22. Defendant denies that any court may lawfully jail him in furtherance of a scheme to abstract ERISA funds to pay private legal fees in violation of 29 U.S.C. § 1056(d).

23. Defendant denies that a state contempt mechanism can be used to compel a federally prohibited transfer, and denies that attorney's fees can be generated from, or secured by, an unlawful forced turnover of ERISA plan assets.

24. On information and belief, these contempt and jail threats are an overt act in furtherance of an enterprise that had already, before the Decree, attempted to grab and "hold" ERISA funds under a concealed writ of garnishment, then buried that fact by omitting it from the Decree, and now seeks to retroactively sanitize and complete that taking by calling it "enforcement." This Petition functions as damage control and a continuation of that same scheme, not a neutral request to administer a legitimate, qualified QDRO.

   F.   "Clarification of Prior Order"

25. Petitioner asks for a "clarifying order" if the Decree was "not specific enough to be enforced by contempt," and then seeks to jail Defendant under the clarified language.

26. Defendant admits Petitioner requests clarification.

27. Defendant denies Petitioner can obtain retroactive contempt or incarceration for alleged noncompliance with language that was not previously specific. A court cannot rewrite vague terms now and jail Defendant for past conduct under those new terms. That violates due process.

   G.   "Attorney's Fees"

28. Petitioner asks for "reasonable attorney's fees," seeks a money judgment "in favor of the attorney," and asks that the attorney personally be able to enforce that money judgment.

29. Defendant denies Petitioner and Petitioner's counsel are entitled to any such award.

30. Defendant further denies that ERISA allows Petitioner, or Petitioner's attorney, to convert Defendant's ERISA-governed retirement assets into "attorney's fees," to enter a money judgment "in favor of the attorney," or to allow that attorney to personally enforce that judgment

as if counsel were a direct creditor of the plan participant. ERISA's anti-alienation clause, 29 U.S.C. § 1056(d)(1), strictly prohibits any other device that would extract value out of an ERISA-governed retirement plan account unless and until there is a valid QDRO under 29 U.S.C. § 1056(d)(3). ERISA does not authorize private divorce counsel to pierce anti-alienation protection and redirect plan assets or force liquidation of plan assets to satisfy a personal fee award, nor to enforce that fee award directly against the participant.

31. On information and belief, that fee request is part of the same continuing scheme: to generate attorney fee awards funded by coerced ERISA asset turnover, backed by threat of incarceration, and to convert those retirement funds into private counsel revenue.

### H. "Prayer / All Further Relief"

32. Petitioner asks for contempt, incarceration, fines, clarification orders, attorney's fees, costs, and "all further relief."

33. Defendant denies that Petitioner is entitled to any of that relief.

## III. DEFENSES AND AFFIRMATIVE MATTERS

Without waiving the denials above, Defendant asserts these defenses and objections to preserve all rights under Fed. R. Civ. P. 8(c), 12(b), and 81(c).

### A. ERISA Anti-Alienation / Preemption

34. ERISA forbids assignment, garnishment, seizure, turnover, receivership, contempt-backed forfeiture, or forced disbursement of Defendant's ERISA-governed retirement benefits except through a QDRO that satisfies 29 U.S.C. § 1056(d)(3).

35. Petitioner has not pled that a final, qualified QDRO has been issued, accepted, and implemented by the plan administrator. Instead, Petitioner demands contempt, incarceration, and forced turnover first and "QDRO completion" later.

36. Any state-law mechanism — including any prejudgment writ of garnishment / turnover that the state court secretly held pre-Decree to "possess" ERISA funds under color of Texas law, never disclosed in the Decree, and now being laundered as standard "enforcement" — is preempted by ERISA and void.

37. Petitioner therefore seeks relief barred by 29 U.S.C. § 1056(d)(1) and within the exclusive federal remedial scheme of ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), not contempt incarceration.

### B. No Valid QDRO Alleged / Plan Administrator Control

38. ERISA requires the plan administrator to review any proposed domestic relations order, determine whether it qualifies as a "QDRO," segregate disputed funds if necessary, and only then authorize distribution consistent with § 1056(d)(3).

39. Petitioner has not alleged that the plan administrator accepted any such QDRO. Petitioner instead asks this Court to jail Defendant until he causes a distribution that ERISA will not yet allow. That is unlawful on its face.

### C. Petition as Damage-Control Overt Act in a Continuing ERISA/RICO Scheme

40. Defendant incorporates by reference the allegations in *Yan v. State Bar of Texas, et al.*, No. 4:23-cv-00758-P-BJ (N.D. Tex. Fort Worth Div.), where he alleges a continuing racketeering enterprise that uses state-court process to abstract and embezzle ERISA plan assets, including through concealed prejudgment writs, turnover/receivership devices, "emergency QDRO" language, threats of contempt and incarceration, and fee extraction, followed by post-hoc laundering through supposed "clarification" and "QDRO" procedure.

41. On information and belief, the state court in this matter already issued and concealed a prejudgment writ of garnishment / turnover / receivership purporting to "possess" a defined amount of Defendant's ERISA retirement funds under Texas law, and then entered a Decree that omitted any disclosure of that writ or that seized amount. The instant Petition is an overt act designed to (a) retroactively sanitize that concealed seizure as ordinary "enforcement," and (b) continue the coercive extraction of ERISA assets by threatening incarceration and contempt in order to force "immediate" payout and fee awards.

42. Defendant alleges this Petition advances and conceals the same unlawful scheme and has caused, and threatens to continue causing, injury to Defendant's property, including: loss and impairment of ERISA retirement benefits, plan-level costs, coerced fee exposure, and litigation expenses required to resist illegal alienation.

### D. Constitutional Due Process / Impossibility

43. Petitioner asks for punitive incarceration (up to six months) plus coercive incarceration ("until he complies," up to eighteen more months) to force Defendant to liquidate or transfer retirement funds.

44. Jailing Defendant for refusing to perform an act that federal law forbids, i.e., alienating ERISA plan assets without a valid QDRO violates due process.

45. Contempt cannot constitutionally be used to compel an impossible or illegal act. It is legally impossible for Defendant to lawfully alienate ERISA-governed pension/401(k) assets on demand without a qualified, accepted QDRO.

E. No Retroactive Contempt

46. Petitioner admits the Decree may not be "specific enough to be enforced by contempt," and therefore asks the Court to "clarify" and then jail Defendant.

47. A party cannot be jailed for violating terms that were not previously definite, clear, and in effect. Retroactive "clarification" cannot bootstrap criminal contempt.

F. Fees Demand Is Barred by ERISA and Is Part of the Scheme

48. Petitioner demands "reasonable attorney's fees," seeks entry of a money judgment "in favor of the attorney," and asks that the attorney personally be able to enforce that judgment against Defendant.

49. Defendant objects. ERISA's anti-alienation clause, 29 U.S.C. § 1056(d)(1), strictly prohibits assignment, garnishment, transfer, turnover, receivership, contempt-backed forfeiture, or any other device that would extract value out of an ERISA-governed retirement plan account unless and until there is a valid Qualified Domestic Relations Order under 29 U.S.C. § 1056(d)(3). That protection extends to attempts to divert plan assets (or to force the participant to liquidate plan assets) to satisfy "reasonable attorney's fees," to create a personal money judgment "in favor of the attorney," or to allow that attorney to act as a direct judgment creditor. ERISA does not authorize private divorce counsel to pierce anti-alienation protection and convert retirement assets into an enforceable personal fee award, or to enforce that fee award directly against the participant by threat of contempt and incarceration.

50. On information and belief, that fee request is part of the same continuing scheme: to generate fee awards funded by coerced ERISA asset turnover, backed by threat of incarceration, and to convert those retirement funds into private counsel revenue.

### G. Reservation

51. Defendant reserves all defenses available under Fed. R. Civ. P. 8(c), 12(b), and 12(c), including lack of jurisdiction to enter contempt/incarceration orders aimed at forcing ERISA violations; abstention / Rooker–Feldman objections to any attempt to conscript this Court into rubber-stamping a state contempt jailing; and any additional defenses revealed by discovery.

### H. No Violation of Decree / Modification in Disguise

52. Defendant affirmatively alleges that the Petition fails to identify any act or omission by Defendant that violates a clear, specific, and unambiguous command of the Final Decree of Divorce relating to any Qualified Domestic Relations Order ("QDRO"). The Petition therefore does not state a legally sufficient basis for contempt.

53. The Decree awards Petitioner a percentage interest in Defendant's US Bank retirement plan and states that the division "is to be effectuated using a Qualified Domestic Relations Order **signed by the Court**." The Decree does **not** (a) direct **Defendant to sign** any particular QDRO, (b) order Defendant to cause the Plan to distribute any specific dollar amount or percentage by a date certain, or (c) impose any deadline by which Defendant must take any QDRO-related action. No court-signed QDRO currently exists.

54. Because there is no court signed QDRO and no definite, presently-effective decree provision directing Defendant to perform a specific QDRO-related act by a date certain, Defendant has not violated the Decree, and there is **no valid predicate** for civil or criminal contempt based on the QDRO provision.

55. To the extent Petitioner seeks contempt based on alleged non-payment of fees or costs associated with any proposed QDRO or plan administration, the Petition still fails to allege violation of any clear, specific decree language requiring Defendant to pay a particular amount of incurred fees or costs by a particular date. Any such alleged obligation is, in any event, governed by and barred or preempted by ERISA and the ERISA-based defenses set out above, including ERISA's anti-alienation and exclusive-remedy provisions.

56. Petitioner is aware, or reasonably should be aware, that Defendant has not violated any clear, specific provision of the Final Decree that is presently enforceable by contempt. Rather than identify a discrete act of disobedience, the Petition seeks, under the labels of "clarifying" order and contempt, to alter the existing division of property by compelling a new distribution of ERISA-protected retirement benefits and reallocating plan-related fees. The relief requested is, in substance, a modification of ERISA plan benefit allocation and cost responsibility, not enforcement of a clear and definite court command. As such, the proceeding is properly characterized as a property-division dispute over ERISA plan benefits, not the type of core contempt or quasi-criminal enforcement action to which *Younger* and related abstention doctrines give special deference, and it does not divest this Court of properly invoked federal-question jurisdiction.

57. For these reasons, the Petition fails to state any legally sufficient basis for enforcement or contempt against Defendant, fails to allege any violation of a clear and specific decree provision, and all requested contempt relief must be denied.

## IV. PRAYER

13. Defendant respectfully asks that the Court:

a. Deny all relief requested by Petitioner, including contempt, fines, incarceration (punitive or coercive), forced turnover, "immediate" disbursement of retirement funds, retroactive "clarification" to support contempt, and attorney's fees;

b. Hold that Petitioner cannot seize, garnish, assign, abstract, encumber, "possess," or compel turnover or distribution of Defendant's ERISA-governed retirement assets — and cannot jail Defendant to coerce that result — unless and until there is a valid Qualified Domestic Relations Order that fully complies with 29 U.S.C. § 1056(d)(3) and has been accepted by the plan administrator;

c. Recognize that the court previously issued and concealed a prejudgment writ of garnishment / turnover / receivership purporting to "possess" Defendant's ERISA retirement funds under Texas law, withheld that fact from the Final Decree, and that this Petition is an overt act intended to sanitize and complete that unlawful seizure through

contempt threats and forced "clarification," consistent with an ongoing ERISA/RICO scheme already alleged in a related federal case;

d.      Hold that ERISA's anti-alienation rule, 29 U.S.C. § 1056(d), does not allow Petitioner or Petitioner's attorney to obtain "reasonable attorney's fees" by compelling turnover, liquidation, assignment, or other forced use of Defendant's ERISA-governed retirement assets, does not permit entry of a money judgment "in favor of the attorney" funded by those assets, and does not allow that attorney to personally enforce such a judgment as if counsel were a direct creditor of the plan participant;

e.      Award Defendant any other relief, at law or in equity, to which he is entitled.

Respectfully submitted,

/s/ Conghua Yan

Conghua Yan
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com

## CERTIFICATE OF SERVICE

I certify that on November 25, 2025, I served a true and correct copy of this Answer and Defenses on all counsel of record  by the Texas e-filing system (efiletx.tylertech.cloud), by email, and/or by certified mail, return receipt requested, and I filed this Answer and Defenses in the United States District Court for the Northern District of Texas, Fort Worth Division, in the above-captioned removed case.

*/s/ Conghua Yan*
Conghua Yan